```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DR. WILLIAM JIMENEZ URIBE,                   :
                                             :
                        Plaintiff,           :
                                             :    REPORT AND
          -against-                          :    RECOMMENDATION
                                             :
                                             :    No. 17-CV-5155-RPK-JRC
STEPHANIE CECILIA NIEVES,                    :
                        Defendant.           :
------------------------------------------------------------------ x
```

JAMES R. CHO, United States Magistrate Judge:

### Introduction

Plaintiff Dr. William Jimenez Uribe ("plaintiff") commenced this action against defendant Stephanie Cecilia Nieves ("defendant") for publishing written and oral false statements on the Internet. When defendant failed to file an answer or otherwise appear in this action, a certificate of default was entered. Dkt. 9. Plaintiff then filed a motion for default judgment. Dkt. 11. The Court denied plaintiff's motion due to his failure to show that defendant was not in the military at the time of service. *See* Order dated September 26, 2018. Thereafter, the case was reassigned to the Honorable Rachel P. Kovner, and plaintiff renewed his motion for default judgment. *See* Mot. for Default J., Dkt. 18.

Currently pending before this Court, on a referral from Judge Kovner, is plaintiff's renewed motion for default judgment. *See* Order Referring Motion dated January 3, 2022. For the reasons described below, this Court respectfully recommends denying plaintiff's motion for default judgment and recommends a dismissal of plaintiff's causes of action for failure to state a claim.

## Background

I.  **Factual Background**

The following facts are taken from the Complaint (Dkt. 1) and assumed to be true for purposes of this motion. Plaintiff is a plastic surgeon based in Colombia. Compl. ¶ 6, Dkt. 1. In May 2017, defendant traveled to Colombia to undergo treatment from plaintiff (*i.e.*, breast and body reconstruction surgeries). *Id.* ¶ 12.[1]

Prior to undergoing surgeries, plaintiff informed defendant of the "clinical risks of the surgery, including necrosis of the areola and the nipple," to which she "approved and freely and voluntarily signed an informed medical consent." *Id.* ¶ 14. In addition to the risks of surgery, plaintiff advised defendant regarding post-operative care, which included instructions for defendant to "rest and recuperate from the surgery before traveling." *Id.* ¶ 4.

On May 18, 2017, plaintiff performed breast and body reconstruction surgeries on defendant. *Id.* ¶ 16. Following the surgery, defendant ignored plaintiff and his staff's standard postoperative recommendations, including the warning that defendant stay and recuperate at a recovery house in lieu of traveling and engaging in physical activity. *Id.* ¶ 17. Plaintiff claims that against medical advice, defendant traveled "only seven days after surgery," and that defendant engaged in physical activities that included shopping and visiting a casino as early as eleven days after the surgery. *Id.* ¶ 18. After defendant informed plaintiff that she "needed to return to New York," defendant left Colombia to return to New York "earlier than [p]laintiff had expressly recommended . . . ." *Id.* ¶ 19.

---

[1] Before these surgeries, defendant previously had other plastic surgery operations, "which caused her complications in her left breast, among other things, and left her generally unsatisfied with the result." Compl. at ¶ 13.

2

On or around June 10, 2017, a medical professional in New York contacted plaintiff and advised him that defendant was "suffering from necrosis in her left areola." *Id.* ¶ 20. "[N]ecrosis of the areola is a benign or non-cancerous condition" that is an "inherent risk of breast reconstruction procedures." *Id.* ¶¶ 21–22.

In or around June 2017, defendant requested a refund for her plastic surgery procedure. *Id.* ¶ 5. Plaintiff, however, refused to issue a refund to defendant, and shortly thereafter, on or about June 24, 2017, defendant created an Instagram account with the username "botchedbyjimenez." *Id.* Defendant has been using this online social media account to post negative comments and live videos of her experiences after her plastic surgeries. *Id.* ¶ 1. Defendant allegedly has used the "botchedbyjimenez" account "to defame [p]laintiff; tortiously interfere with his relationships with patients, potential patients[,] peers and colleagues; and to destroy his career as a successful plastic surgeon." *Id.*

Prior to creating the "botchedbyjimenez" Instagram account, according to plaintiff, defendant "publicly stated that 'necrosis on the areola [was] not [plaintiff's] fault . . . .'" *Id.* ¶ 3. Since the creation of the account, plaintiff alleges that defendant has used it to harm plaintiff's "professional reputation, his client relationships and the ability of his practice to retain clients and win new clients." *Id.* ¶ 25. The Instagram account "falsely portrays [p]laintiff as mishandling [defendant's] breast reconstruction surgery and engaging in medical malpractice." *Id.* ¶ 26. Defendant has used it to post content, such as plaintiff is a "'money hungry [and] unprofessional' doctor who 'botched' her breast reconstruction surgery, and is a 'butcher.'" *Id.* ¶ 2.

Plaintiff denies the statements and social media posts made by defendant concerning her surgery and post-operation complications. *Id.* Further, plaintiff alleges that defendant's post-

3

surgery complications are not his "fault," and that he is "a caring and professional physician who cares about his patients (including [defendant] while she was in [h]is care)." *Id.* ¶ 46.

Plaintiff alleges that defendant acted with both common law malice and actual malice, as evidenced by defendant's posts and her awareness that necrosis and other complications could present after her operation. *Id.* ¶¶ 48–49. On July 25, 2017, plaintiff sent defendant a cease-and-desist letter. *Id.* ¶ 50.

Plaintiff claims to have "suffered general damages, including but not limited to damage to his reputation" because of the statements made by defendant. *Id.* ¶ 54. Plaintiff further claims that defendant "intended to destroy [p]laintiff's reputation and therefore his career as a plastic surgeon." *Id.* ¶ 55. "As a consequence of [d]efendant's false statements and botchedbyjimenez Instagram account, [p]laintiff has suffered specific damages, including lost opportunities with patients and potential patients." *Id.* ¶ 56. "[N]umerous third-party women have posted on [d]efendant's bothcedbyjimenez account that they were going to use [p]laintiff [for their plastic surgery operations] but had changed their mind[s] as a result of [d]efendant's false statements." *Id.* ¶ 57. "Plaintiff has had nine (9) patients per month cancel their procedures [] as a direct result of [d]efendant's tortious conduct," which "has resulted in a loss of approximately $35,000 in revenue per month to [p]laintiff's business." *Id.* ¶ 58.

Plaintiff seeks injunctive relief and monetary damages based on defendant's defamation *per se* by libel and by slander, defamation by implication, tortious interference with prospective economic advantage, and prima facie tort.

**II.   Procedural History**

On August 31, 2017, plaintiff commenced this action against defendant for defamation *per se* by libel and by slander, defamation by implication, tortious interference with prospective

4

economic advantage, and prima facie tort. *See* Compl. (First through Fifth Causes of Action). After defendant served plaintiff with the summons and Complaint, defendant failed to appear, answer, or otherwise respond to the Complaint. Plaintiff sought, and the Clerk of Court entered, a certificate of default. *See* Dkts. 8, 9. On October 19, 2017, plaintiff filed his first motion for default judgment. *See* Notice of Motion for Default Judgment dated October 19, 2017, Dkt. 11. On September 26, 2018, the Court denied plaintiff's motion for failure to comply with the Servicemembers Civil Relief Act (the "Act"). *See* Mem. and Order dated September 26, 2018, Dkt. 13. On October 31, 2018, plaintiff renewed his motion for default judgment. Dkt. 14. The On September 23, 2019, the Court denied plaintiff's motion to renew. *See* Order Denying Motion for Default Judgment dated September 23, 2019. On October 1, 2019, plaintiff filed a letter arguing that he made an adequate showing of defendant's non-military status pursuant to the Servicemembers Civil Relief Act. Dkt. 15.

On November 24, 2021, this case was reassigned to Judge Kovner, and on December 2, 2021, Judge Kovner allowed plaintiff to renew his motion for default judgment. On December 31, 2021, plaintiff renewed his motion for default judgment. Dkt. 18. On January 3, 2022, Judge Kovner referred plaintiff's renewed motion to the undersigned. *See* Order Referring Mot. dated January 3, 2022. This Court held two hearings on February 7, 2022, and April 8, 2022. Defendant failed to appear for both hearings. *See* Minute Entries dated February 7, 2022, and April 8, 2022.

## Discussion

### I. Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation

of the party's default on the Clerk's record of the case. *See* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, the Court may enter a default judgment. *See* Fed R. Civ. P. 55(b). Here, on October 5, 2017, the Clerk of the Court entered a certificate of default against defendant after she failed to appear. *See* Certificate of Default, Dkt. 9.

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk enters a certificate of default, defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v.*

*Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case."  *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations omitted).  Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

## II.     Choice of Law

"As an initial matter, this Court must determine what law should be applied to Plaintiff's [claims]."  *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015).  "In a diversity action, the choice of law rules of the forum state -- here, New York -- govern."  *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 566 F. App'x 95, 97 (2d Cir. 2014) (citing *Krauss v. Manhattan Life Ins. Co. of New York*, 643 F.2d 98, 100 (2d Cir. 1981)).  *See* Compl. ¶ 9–10 (noting that this case was brought under diversity jurisdiction).

Under New York choice of law rules, "tort claims are governed by the 'substantive law of the jurisdiction that has the most significant interest in the specific issue raised in the litigation.'"  *Daniels v. Kostreva*, No. 15-CV-3141, 2017 WL 823583, at *5 (E.D.N.Y. Jan. 12, 2017) (internal quotations and citations omitted).  To evaluate which state has the most significant interest, New York courts distinguish between "conduct regulating" and "loss allocating" rules.  *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  "If the laws at issue are primarily conduct-regulating, the law of the jurisdiction where the tort occurred will generally apply

7

because that jurisdiction has the greatest interest in regulating behavior within its borders." *Daniels*, 2017 WL 823583, at *5 (internal quotations and citations omitted). The Second Circuit has held that "[d]iscouraging defamation is a conduct regulating rule" and thus "the situs of the tort should control." *Lee*, 166 F.3d at 545.

Here, this Court recommends applying New York law in this action. While plaintiff has not taken a formal position on choice of law, plaintiff cites to New York law in his motion papers. *See* Mem. in Support of Motion for Default J., Dkt. 18-1 ("Pl.'s Mem."), at 9. The conduct at issue in this case likely took place in New York. Defendant is a resident of Flushing, New York. Compl. ¶ 8. While plaintiff does not specify where defendant was when she created her Instagram account "botchedbyjimenz" or posted allegedly defamatory comments about the plaintiff, plaintiff does allege that the conduct in question took place only after the defendant returned home to New York from Colombia. Compl ¶ 19. Further, this Court cannot determine another state or country's law that would apply here. Plaintiff has not alleged any facts that another jurisdiction has a more significant interest here. Accordingly, this Court will apply New York state law in considering plaintiff's claims.

### III. Dismissal for Failure to State a Claim

"Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule." *De Santis v. City of New York*, No. 10 Civ. 3508, 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014) (quoting *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999)). Among the district court's implicit powers is the authority "to dismiss a complaint *sua sponte* for failure to state a claim." *Id*. (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see McKnight v. Middleton*, 699 F. Supp. 2d 507, 533 (E.D.N.Y. 2010)

(holding that dismissal of *pro se* plaintiff's complaint is appropriate where the "claims lack an arguable basis in law and fact."); *see also Kearney v. Todd L. Smith, P.A.*, 624 F. Supp. 1008, 1014 (S.D.N.Y. 1985) ("District courts have the ability to *sua sponte* dismiss a complaint for failure to state a claim upon which relief can be granted.") (citation omitted).

In the context of a motion for default judgment, "if a plaintiff fails to state a claim, a court cannot enter default judgment in the plaintiff's favor . . . and must instead dismiss the claim." *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2022 WL 1266209, at *4 (S.D.N.Y Apr. 28, 2022). Regardless of whether defendant has failed to appear, "[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant." *Id*. (quoting *Pac. M. Int'l Corp. v. Raman Int'l Gems*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012)).

This Court now assesses the propriety of a default judgment for each of plaintiff's claims in the Complaint. For the reasons set forth below, this Court respectfully recommends denying plaintiff's motion for default judgment and recommends dismissing this action because plaintiff's Complaint fails to state a claim upon which relief can be granted.

**IV.  Liability**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," a plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs.,*

9

*Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations omitted).

### A.    Defamation *Per Se* by Libel and by Slander

"To prove defamation under New York law, a plaintiff must show that the defendant made a statement that was: (1) false, defamatory, and of and concerning the plaintiff; (2) published to a third party; (3) made with the applicable level of fault; and (4) defamatory *per se* or that caused the plaintiff 'special' harm." *Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045, 2021 WL 4502470, at *16 (E.D.N.Y. Sept. 30, 2021) (citing *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011)). "In order to constitute defamation *per se*, the statement must (i) charge an individual with a serious crime, (ii) injure another in his or her trade, business, or profession, (iii) claim an individual has a loathsome disease or (iv) impute unchastity to a woman." *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76–77 (S.D.N.Y. 2012) (citations omitted).

Here, plaintiff alleges that defendant published false statements "without authorization or privilege, to injure Plaintiff in his trade, business and profession." Pl.'s Mem. at 9. "To find that a statement qualifies as one that tends to injure another in his or her trade, business or profession, the statement must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities." *Thompson*, 855 F. Supp. 2d at 77 (internal quotations and citations omitted); *see also Daniels*, 2017 WL 823583, at *8 ("Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct . . ."). "The allegedly defamatory statement must be targeted at the specific standards of performance

10

relevant to the plaintiff's business and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (internal quotations and citations omitted).

While defendant did post negative comments about plaintiff, this Court must determine whether defendant's statements rise to the level of legal defamation. "Under New York law, only statements alleging facts can properly be the subject of a defamation action." *Id.* (internal quotations and citations omitted). "Because there is no such thing as a false idea, courts must distinguish between statements of fact, which may be defamatory, and expressions of opinion, which are not defamatory; instead, they receive absolute protection under the New York Constitution." *Mirza v. Amar*, 513 F. Supp. 3d 292, 297 (E.D.N.Y. 2021) (internal quotations and citations); *see also Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir.2000) ("[T]he New York Constitution provides for absolute protection of opinions."). To determine whether a statement is fact or opinion, courts consider the following three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Mirza*, 513 F. Supp. 3d at 297 (internal citations omitted). "Only a provable statement of fact [ ] -- unlike a statement of opinion or a loose, figurative or hyperbolic statement -- can be actionable as defamation." *Id.* (internal citations and quotations omitted). "However, 'a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts' is not actionable." *Id.* at 298 (quoting *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015)).

11

Here, the context in which defendant made her statements suggest that the postings were expressions of her opinions. New York courts hold that statements posted in forums online are opinion, not fact. *Id*. Online forums, such as Instagram, are informal and unedited, and, therefore, less credence is given to allegedly defamatory remarks. *See Valley Electronics AG v. Polis*, No. 21-2108-cv, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) ("[T]he article published on the blog section of [defendant's] personal website and [defendant's] Instagram comments used 'medi[a] that [are] typically regarded by the public as . . . vehicle[s] for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter.'") (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 52 (1995)) (internal quotations and citation omitted)). In the context of an online forum, statements are merely subjective expressions of consumer dissatisfaction and thus nonactionable opinion. *See Mirza*, 513 F. Supp. 3d at 298. Here, defendant has made all her statements by using her "botchedbyjimenez" Instagram account -- an online forum.[2] Defendant's criticism of plaintiff's operation in an Instagram post likely "would induce the average reader . . . to look upon the communication as an expression of opinion rather than a statement of fact." *Valley Electronics AG*, 2022 WL 893674, at *2 (quoting *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991)).

New York courts have further held that "loose, figurative or hyperbolic statements," including slang terms, may also signal to the recipient of the message that the statements are merely the "opinion of a disgruntled consumer." *Mirza*, 513 F. Supp. 3d at 297–98. Here, the statements made by defendant contain at least some hyperbole, and her frequent use of slang terms suggests that these statements are her opinion. For example, the defendant refers to the

---

[2] Plaintiff acknowledges that as of 2018, the posts are no longer publicly accessible. *See* Plaintiff's declaration at ¶ 8, Dkt. 18-9.

12

plaintiff as "money hungry," a "butcher," and a "scammer doctor." Compl. ¶¶ 2, 35. Although these terms may elicit strong emotions from the reader, they are hyperbolic in nature. Even the term "botched," which is referenced repeatedly in the Complaint, is a slang term used to describe defendant's opinion about the plaintiff's medical performance. The overall context of the statements made by defendant on her Instagram account would lead the average reader to believe that these statements were the opinions of a dissatisfied customer. In light of the context in which defendant expressed herself, this Court recommends finding that the statements made by defendant constitute nonactionable opinion warranting dismissal of plaintiff's *per se* defamation claims.

### B. Defamation By Implication

Generally, a plaintiff must allege specific false statements made by the defendant to adequately plead defamation. *See Sorvillo*, 607 F. App'x at 24. However, one exception to this rule is defamation by implication, which is "premised not on direct [false] statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Id*. (quoting *Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373, 380–81 (1995)). Defamation by implication "occurs where '[a] combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff.'" *Macineirghe v. Cnty. Of Suffolk*, No. 13-cv-1512, 2015 WL 4459456, at *10 (E.D.N.Y. July 21, 2015) (internal quotations and citation omitted). To prevail on a claim of defamation by implication, a plaintiff generally must "show that the defendants intended such implication when making the statement at issue." *Id*. (quoting *Ello v. Singh*, 531 F. Supp. 2d 552, 580 (S.D.N.Y. 2007)). Ultimately, "[t]he Court must decide, as a matter of law, whether the challenged statements are opinion." *Id*. (citations omitted).

13

As discussed in section IV.A., above, the statements made by defendant constitute nonactionable opinion.  Plaintiff quotes numerous statements made by defendant both in the Complaint and in his Memorandum of Law.  *See generally*, Compl., Dkt. 1 and Pl.'s Mem., Dkt. 18.  Plaintiff allegedly made these statements in the context of either an Instagram post or Instagram Live broadcast.[3]  This Court finds these statements equally deficient and nonactionable statements of opinion.  For example, plaintiff alleges that defendant posted[4] the following statement: "I'm looking at 50k to reconstruct, hospital bills, medications thanks to him."  Pl.'s Mem. at 13.  Plaintiff further states defendant posted, "Thanks to 'Dr.' William Jimenez Uribe who told me my breast didn't have a[n] infection my breast looks like the bottom picture today #botchedbyjimenez."  *Id*.  These statements read as a dissatisfied consumer's review of a medical procedure, especially when read in the context of an Instagram post.

Plaintiff also alleges that defendant posted "graphic images of the necrosis she is suffering from" to her Instagram account, claiming that it is a "clear effort" to imply that defendant is responsible for her necrosis.  *Id*.  These photos were also accompanied by more posts in which defendant expresses her dissatisfaction with plaintiff's surgical procedure.  *Id*. at 13–14.  These arguments are unavailing to this Court.  The mere fact that defendant's Instagram posts are accompanied by graphic photos of her post-operative necrosis does not make the defendant's posts any more defamatory.  Given the context in which defendant's statements were

---

[3] Instagram Live is an Instagram feature that allows the user to stream live video to the account's followers.

[4] For purposes of this Report and Recommendation, this Court assumes the statements that plaintiff alleges defendant made are posted on her Instagram account, as neither the Complaint nor the plaintiff's Memorandum of Law clearly indicates how the statements were made, *i.e.* via Instagram post or Instagram Live.

14

made, this Court recommends finding that the statements made by defendant on her Instagram page are nonactionable opinion and insufficient to assert a claim for defamation by implication.

      C.      **Tortious Interference with Prospective Economic Advantage**

In addition to his defamation claims, plaintiff alleges tortious interference with prospective economic advantage. "New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Mirza*, 513 F. Supp. 3d at 301 (citations omitted). Courts dismiss a claim for tortious interference with prospective economic advantage as duplicative of a defamation claim where such claim is premised on the same "'factual allegations . . . [as] the facts underlying [the] defamation claim.'" *Goldman v. Barrett*, No. 15 Civ. 9223, 2016 WL 5942529, at *7 (S.D.N.Y. Aug. 24, 2016) (internal quotations and citations omitted).

Here, plaintiff's tortious interference claim is duplicative of his defamation claims. The facts underlying the tortious interference claim are the same as the facts supporting the defamation claims. Plaintiff's alleged injury for each claim flows from the effect of defendant's allegedly defamatory statements on plaintiff's reputation. Accordingly, this Court recommends dismissing plaintiff's tortious interference claim as duplicative.

      D.      **Prima Facie Tort**

Finally, plaintiff alleges a prima facie tort claim. For this cause of action, plaintiff claims that "Defendant's sole purpose for creating and maintaining the botchedbyjimenez Instagram account . . . is to intentionally inflict emotional and financial harm upon Plaintiff." Compl. ¶ 97, Dkt. 1. Plaintiff further claims that defendant's "Instagram account has caused such harm and

15

resulted in the loss of business opportunities, as well as resulted in damage to the Plaintiff's reputation." *Id.* ¶ 98.

"[I]t is well-settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort -- even if the traditional tort claims turn out not to be viable." *Goldman*, 2016 WL 5942529, at *7 (internal quotations and citation omitted). "This principle has been applied in the defamation context." *Id.* (citation omitted). "Where the factual allegations underlying the prima facie tort cause of action relate to the dissemination of allegedly defamatory materials, that cause of action must fail." *Id.* (internal quotations and citation omitted).

Here, plaintiff's prima facie tort claim is based on defendant's decision to "create[e] and maintain[] the botchedbyjimenez Instagram account." Compl. ¶ 97, Dkt. 1. Plaintiff does not allege any conduct beyond the defendant's creation and maintenance of her Instagram account. Similarly, as with plaintiff's tortious interference claim, any alleged financial injury suffered by plaintiff derives solely from defendant's statements about plaintiff. Because the prima facie tort "claim relates only to [the] defamatory [statements,] [it too] must fail." *Goldman*, 2016 WL 5942529, at *7 (citing *Chao v. Mount Sinai Hosp.*, 10 CV 2869, 2010 WL 5222118, at * 14 (S.D.N.Y. Dec. 17, 2010)). Accordingly, this Court recommends dismissal of plaintiff's prima facie tort as duplicative.

## Conclusion

For the reasons stated above, this Court respectfully recommends denying plaintiff's motion for default judgment and dismissing the Complaint in its entirety for failure to state a claim.

A copy of this Report and Recommendation is being electronically served on counsel.

16

Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendant and to file proof of service on ECF by **September 15, 2022**.  Any objections to the recommendations made in this Report must be filed with the Honorable Rachel P. Kovner within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 27, 2022**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).  The Clerk is requested to enter this Report and Recommendation into the ECF system.

    **SO ORDERED**

Dated: Brooklyn, New York
       September 13, 2022

                                             s/ James R. Cho
                                             James R. Cho
                                             United States Magistrate Judge